## FORM 1.997.   CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>FIFTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>PALM BEACH</u>   COUNTY, FLORIDA

<u>MATTHEW HAYDEN</u>
Plaintiff

Case # _____

Judge _____

vs.

<u>STEVEN F URVAN</u>
Defendant

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐  $8,000 or less
- ☐  $8,001 - $30,000
- ☐  $30,001- $50,000
- ☐  $50,001- $75,000
- ☐  $75,001 - $100,000
- ☒  over $100,000.00

### III.   TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.



- 1 -

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 10/18/2021 12:32:48 PM

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☐ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☒ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

NOT A CERTIFIED COPY

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

    **IV.**     **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

    **V.**     **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

    <u>5</u>

    **VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

    **VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Matthew P McLauchlin</u>      Fla. Bar # <u>484180</u>
    Attorney or party      (Bar # if attorney)

<u>Matthew P McLauchlin</u>      <u>10/18/2021</u>
 (type or print name)      Date

NOT A CERTIFIED COPY

- 3 -

IN THE CIRCUIT COURT, FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.

DIVISION:

MATTHEW HAYDEN,

     Plaintiff,

v.

STEVEN F. URVAN,

     Defendant.

_____/

## COMPLAINT

Plaintiff, Matthew Hayden, sues Defendant, Steven F. Urvan, and states:

1.     This is an action for damages in excess of $30,000 exclusive of interest, costs, and attorneys' fees.

2.     Plaintiff, Matthew Hayden ("Hayden") is an individual who resides in San Clemente, California.

3.     Defendant, Steve F. Urvan ("Urvan"), is an individual who resides in Palm Beach County, Florida. At all times material, Urvan engaged, consulted and communicated with Hayden and entered into the business agreements set forth herein from and in Palm Beach County, Florida.

### FACTS

**I.**     **Urvan Retains Hayden to find a Buyer for his Business, Gunbroker.com**

4.     Hayden is a business consultant who provides a variety of business advisory and business development services to his clients.

1

5.      Urvan is a business entrepreneur who has owned and operated a number of businesses over the years.

6.      In 1999, Urvan founded "Gunbroker.com," an on-line auction marketplace dedicated to firearms, hunting, shooting, and related products.

7.      At all material times, Urvan was the sole owner and shareholder of the Gunbroker.com business.

8.      Hayden and Urvan have known each other professionally and personally for approximately 10 years and have had a variety of business meetings and dealings together over the years. Hayden is an investor in a company founded by Urvan called "App Cohesion." Hayden has evaluated other companies that Urvan has founded for potential personal investment including a blockchain payments company. Hayden and Urvan are also both investors together in a company named "Brewfirst."

9.      Based on their past decade of working together successfully in business and developing a friendship and relationship of trust, Hayden had the utmost trust and confidence in Urvan, and Hayden therefore believed he could rely on the commitments and promises that Urvan made to Hayden.

10.     From 1999 to 2020, Gunbroker.com was highly successful, and its value grew substantially as the company's business grew.

11.     In the spring of 2020, Hayden contacted Urvan in Florida and suggested to him that there was no better time to explore a "liquidity event" in relation to the Gunbroker.com business, given what was happening in the gun sales sector and the capital markets in general.

12.   Based on this discussion with Hayden, Urvan became very interested in finding a buyer for Gunbroker.com, and Hayden offered Urvan, for a finder's fee, to find a buyer.

13.   Urvan was receptive to this offer and accepted it, telling Hayden that he would pay a finder's fee to Hayden if he could find a buyer for Gunbroker.com.

14.   Urvan also represented to Hayden that he was the sole owner of Gunbroker.com

15.   In follow up and to further document and confirm the parties' agreement, on June 15, 2020, Hayden sent an email to Urvan enclosing a "Consulting Agreement" (**Exhibit A**), which laid out among other things the terms for the amounts that Hayden would be paid if he made a successful introduction that led to an acquisition of Gunbroker.com.

> Consultant will receive compensation if an introduction to a company, investment group, merger candidate, or acquirer, leads to a successful acquisition of either 100%, or less of the Company. The consultant shall be entitled to a fee of : 1) $1 million if the total enterprise value (equity plus debt) of the transaction is $100 million or less, or 2) $1.5 million if the total enterprise value (equity plus debt) of a transaction is between $100 million and $150 million, 3) $2 million if the total enterprise value (equity plus debt) of a transaction is greater than $150 million, but less than $200 million and 4) $2.5 million if the total enterprise value (equity plus debt) of the transaction is greater than $200 million. The fee would be paid at the time the closing occurs.

**Ex. A**, ¶ 3.1

16.   On an approximately 31-minute follow up phone call on June 23, 2020 at approximately 12:12 p.m. (PT) following Hayden's transmission of the Consulting Agreement to Urvan, Urvan represented to Hayden that he had reviewed the terms of the Consulting Agreement, that its terms were "fair" and that he "agreed" to it.

17.   Urvan then stated that while he agreed to the terms of Consulting Agreement, he did not want to actually "sign" it.  He explained the reason was that he would be engaging another

3

company, "Houlihan Lokey," to perform the M&A work for any ultimate transaction, and he did not want to lose any potential transaction if it were learned that there were a number of consulting agreements involved.

18.     However, Urvan went on to emphasize that he was nevertheless verbally promising Hayden that he personally agreed to the  terms of the Consulting Agreement, including its compensation terms, and that therefore he and Hayden had an agreement.

19.     Urvan further promised to Hayden that honoring the unsigned Consulting Agreement would be "my obligation," and that he would "personally take care of it."

20.     To allay any concerns Hayden might have about the Consulting Agreement being "unsigned," Urvan made further statements to induce Hayden into performing under the Consulting Agreement, adding, "*We have known each other for many years,*" and "*You know I am good on my word*."

21.     Based on their friendship and relationship of mutual trust and confidence, and given Urvan's repeated assurances and appeal to their long history together, Hayden believed Urvan's promises to be true and therefore trusted that Urvan would follow through to personally honor the terms of the Consulting Agreement.

22.     Placing his trust in the word of his long-time friend and business colleague, Hayden understood that he and Urvan had an agreement.

**II.     Hayden Undertakes Substantial Efforts to Find a Buyer for Gunbroker.com**

23.     Based on Urvan's promises and assurances, Hayden proceeded over numerous months to put in substantial time and effort to find an acquirer for Gunbroker.com.  Hayden made

over 20 introductions to potential corporate buyers, including many hours of legwork, voluminous calls, emails, in person meetings, correspondence, and follow-ups.

24.    Hayden kept Urvan informed of his activities under their agreement and Urvan was at all times aware of the substantial time and effort that Hayden was putting into finding a buyer for Gunbroker.com.  Urvan was thus fully aware and understood, as he had promised, that Hayden was not working for free and was to be paid for his work, if successful.

25.    Urvan was himself included in numerous calls and email exchanges that Hayden was making to the many businesses that were potentially interested in acquiring Gunbroker.com. Urvan and Hayden had many calls and communications between themselves regarding Hayden's efforts and the companies that might potentially acquire Gunbroker.com.

**III.    Hayden Makes an Introduction that Leads to the Acquisition of Gunbroker.com**

26.    In December 2020, Hayden made an introduction that led to a successful acquisition of Gunbroker.com by a company called Ammo, Inc.

**IV.    Prior to Closing, Urvan Acknowledges his Obligation to Pay Hayden's Fee**

27.    In the months leading up to the closing of the deal for Ammo, Inc. to purchase Gunbroker.com, Hayden and Urvan had discussions and correspondence relating to the method by which Hayden would be paid his fee due under the Consulting Agreement.

28.    On a 24-minute phone call on March 8,  2021, Urvan acknowledged his obligation to pay Hayden his fee and suggested that for tax purposes he pay the fee in the form of a stock purchase of the shares that Hayden owned in App Cohesion (the company owned by Urvan in which Hayden was also a shareholder).  Hayden stated he was amenable to that form of payment.

**V.     Ammo, Inc. Deal Closes for $240 Million and Urvan Refuses to pay Hayden's Fee**

29.     The deal for Ammo, Inc. to acquire the Gunbroker.com business closed on or about May 3, 2021.

30.     The total sum paid by Ammo, Inc. for Gunbroker.com was approximately $240,000,000 (two hundred forty million dollars).

31.     Based on Hayden's work, under the terms of the Consulting Agreement, Hayden's fee for his services was to be $2.5 million.

32.     Accordingly, in May 2021, Hayden followed up with Urvan to request the payment of his fee.  Consistent with their prior discussions about the method of payment, Hayden sent Urvan 2 stock purchase agreements totaling $2.5 million for equity positions he held.

33.     However, Urvan now ignored Hayden's request.

34.     Hayden followed up in writing to Urvan numerous times reminding him of his obligation to make payment under the Consulting Agreement.  Hayden reminded Urvan of the substantial work he undertook to find a buyer as well as the specific introduction he made that led to the acquisition by Ammo, Inc.

35.     For some time, Urvan continued to ignore Hayden's emails.   Then, quite surprisingly, and contrary to the specific representations that Urvan had made to induce Hayden to proceed under the Consulting Agreement without it being signed, Urvan claimed for the first time that there never had been any agreement and demanded to be shown a copy of a "signed" agreement.

36.     Hayden now brings this action against Urvan to hold him to his promises.

37.     All conditions precedent to this action have occurred, have been met, or have been waived.

38.     Hayden has hired the undersigned firm to prosecute this action and is responsible to pay a reasonable fee for its services. Pursuant to the Consulting Agreement and Section 57.105(7), Fla. Stat., Hayden is entitled to an award of attorneys' fees in the event an action must be brought for the enforcement of a breach of its terms.

## COUNT I
## BREACH OF CONTRACT

39.     Hayden incorporates the allegations of paragraphs 1 – 38 above.

40.     Hayden and Urvan are parties to the Consulting Agreement.

41.     Under the Consulting Agreement, Urvan agreed to pay Hayden a $2.5 million fee if the total enterprise value (equity plus debt) of the transaction was greater than $200 million.

42.     Urvan breached the Consulting Agreement by failing to pay Hayden the fee due under the agreement.

43.     Hayden has been damaged in an amount no less than $2.5 million.

WHEREFORE, Plaintiff, Matthew Hayden, demands judgment against Defendant, Steven F. Urvan, for damages, plus interest, costs, attorneys' fees pursuant to contract and Section 57.105(7), Florida Statutes, and such other relief as the Court deems just and appropriate.

## COUNT II
## UNJUST ENRICHMENT

44.     Hayden incorporates the allegations of paragraphs 1 – 37 above.

45.     Pursuant to the requests and representations of Urvan, Hayden undertook to find and did find a buyer for Gunbroker.com and thereby conferred a substantial benefit on Urvan.

46.     Urvan, the sole shareholder of Gunbroker.com, was able to sell his shares in a transaction whose total value was approximately $240 million.

47.     Urvan has knowledge of the benefit.

48.     Urvan has accepted or retained the benefit conferred.

49.     The circumstances are such that it would be inequitable for Urvan to retain the benefit without paying fair value for it.

WHEREFORE, Plaintiff, Matthew Hayden, demands judgment against Defendant, Steven F. Urvan, for damages, plus interest, costs, and such other relief as the Court deems just and appropriate.

**COUNT III**
**FRAUD IN THE INDUCEMENT**

50.     Hayden incorporates the allegations of paragraphs 1 – 37 above.

51.     Urvan made a false statement regarding a material fact when he promised that he would pay Hayden a finder's fee in accordance with the payment terms of the Consulting Agreement.

52.     Urvan knew that the statement was false when he made it or made the statement knowing it was without knowledge of its truth or falsity.

53.     Urvan intended that Hayden rely and act on the false statement.

54.     Hayden justifiably relied on the false statement to his detriment and has been damaged.

WHEREFORE, Plaintiff, Matthew Hayden, demands judgment against Defendant, Steven F. Urvan, for damages, plus interest, costs, and such other relief as the Court deems just and appropriate.

## COUNT IV
## PROMISSORY ESTOPPEL

55.     Hayden incorporates the allegations of paragraphs 1 – 37 above.

56.     Urvan made a promise to Hayden that he would pay him a finder's fee in accordance with the terms of the Consulting Agreement if Hayden could find a buyer for Gunbroker.com.

57.     Urvan should reasonably have expected his promise to induce action on the part of Hayden.

58.     Urvan's promise did induce action on the part of Hayden, who expended substantial time and effort to find a buyer for Gunbroker.com.

59.     Under the circumstances, injustice would result if Urvan's promise to Hayden was not enforced.

WHEREFORE, Plaintiff, Matthew Hayden, demands judgment against Defendant, Steven F. Urvan, for damages, plus interest, costs, and such other relief as the Court deems just and appropriate.

## COUNT V
## BREACH OF IMPLIED IN FACT CONTRACT

60.     Hayden incorporates the allegations of paragraphs 1 – 37 above.

61.     Hayden and Urvan are parties to a contract implied in fact from their communications, conduct, statements, and representations, pursuant to which Hayden performed substantial and valuable services to Urvan at Urvan's express request and under circumstances in which Urvan knew and understood that Hayden was performing pursuant to this request and that Hayden was to be paid for his services.

62.     Urvan has breached the parties' contract by failing to make payment to Hayden for his services.

63.     Hayden has been damaged by Urvan's breach.

WHEREFORE, Plaintiff, Matthew Hayden, demands judgment against Defendant, Steven F. Urvan, for damages, plus interest, costs, and such other relief as the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all matters so triable.

**EAVENSON, FRASER, & LUNSFORD, PLLC**

*/s/ Matthew P. McLauchlin*
Matthew P. McLauchlin
Fla. Bar No. 484180
4230 Pablo Professional Court, Suite 250
Jacksonville, FL 32224
(904) 567-1171 (direct)
(904) 567-1065 (fax)
matt@efli.law
sarah@efli.law

*Attorneys for Plaintiff, Matthew Hayden*

# EXHIBIT A



**CONSULTING AGREEMENT**

**THIS CONSULTING AGREEMENT** ("Agreement") is made and entered into as of the 1st day of June, 2020 ("Effective Date"), by and between **Matthew Hayden** ("Consultant") and Gunbroker.com, an LLC ("Company"), based in Georgia.

In consideration of the mutual promises and agreements contained herein, the parties hereto hereby agree as follows:

Section 1.    <u>Consulting Services</u>.    Consultant agrees to perform all duties and responsibilities, as and when reasonably requested, related to the Company's corporate finance, M&A and capital formation strategy. Consultant agrees to devote all commercially reasonable efforts necessary to perform the Consulting Services.

Section 2.    <u>Term and Termination</u>.    This Agreement shall become effective on the date first written above and shall continue in full force and effect for one (1) year or until sooner terminated by either party, with or without cause, by giving written notice thereof to the other party at least thirty (30) calendar days before the termination is to be effective. Sections 5, 6, 7, 8 and 9 hereof shall survive the termination of this Agreement.

Section 3.    <u>Compensation and Expenses</u>.    The Company will provide Consultant with the following compensation during the term of this Agreement:

3.1    Consultant will receive compensation if an introduction to a company, investment group, merger candidate, or acquirer, leads to a successful acquisition of either 100%, or less of the Company. The consultant shall be entitled to a fee of : 1) $1 million if the total enterprise value (equity plus debt) of the transaction is $100 million or less, or 2) $1.5 million if the total enterprise value (equity plus debt) of a transaction is between $100 million and $150 million, 3) $2 million if the total enterprise value (equity plus debt) of a transaction is greater than $150 million, but less than $200 million and 4) $2.5 million if the total enterprise value (equity plus debt) of the transaction is greater than $200 million. The fee would be paid at the time the closing occurs.

3.2    The Consultant will provide a list of introductions which will be covered under this agreement for a period of 18 months from the time the introduction is made. The Consultant is not a licensed broker dealer, will not act in any such capacity and will only communicate with Qualified Investors (defined as those with more than $25 million in investments/capital). While the Consultant may provide advice to the management team of the Company, the consultant will not negotiate the specific terms or any key points of the transaction with the other parties. This List will be Exhibit 1.

Section 4.    <u>Status</u>.    Neither this Agreement, nor any transaction under or relating to this Agreement, shall be deemed to create an agency, partnership or joint venture relationship between the parties hereto. Consultant shall not be an employee of the Company. Consultant is and shall be an independent contractor. Consultant shall have neither the power nor the authority to negotiate and/or execute agreements on behalf of the Company, and Consultant shall not be authorized to bind the Company in any way whatsoever.

Section 5.    <u>Taxes</u>.    Consultant acknowledges that no federal or state withholding taxes, FICA, SDI or other employee payroll taxes or deductions are made with respect to

compensation paid to Consultant pursuant to this Agreement.  Consultant is responsible for all such taxes, and agrees to report for federal and state income and any other tax purposes all such compensation, and to pay all taxes due thereon.  Consultant further agrees to indemnify, defend and hold Company harmless in the event that any claims are made by any taxing authority, by reason of Consultant's failure to properly pay any and all taxes which are due in relation to the services provided by Consultant to the Company pursuant to this Agreement.

Section 6.    Proprietary Rights. Consultant acknowledges and agrees that Consultant has no right to or interest in the  work, product, documents, reports or other materials created by Consultant specifically in connection with rendering strategic advisory services performed hereunder, nor any right to or interest in any copyright or any other intellectual property right therein.  Nothing contained herein shall prevent Consultant from performing similar services to other companies, providing there is not conflict of interest.  Company shall be deemed sole and exclusive owner of all rights, title and interest in the work product, deliverables (tangible or intangible), and other results and proceeds of Consultant's services to the Company, including all intellectual property rights (collectively, the "Materials").

Section 7.    Confidentiality.

7.1    Confidential Information Defined.    The Company may disclose to Consultant non-public information to further the performance of this Agreement.  "Confidential Information" means all information (written or oral) disclosed by the Company, including but not limited to technical, financial and business information relating to the Company's products, services, processes, profit or margin information, finances, customers, suppliers, prices, marketing, and future business plans.  Consultant will not, either during or subsequent to the term of this Agreement, directly or indirectly divulge to any unauthorized person any information designated as confidential by Company; nor will Consultant disclose to anyone other than a Company employee or use in any way other than in the course of the performance of this Agreement any information regarding Company, including Company's platforms, technologies, research and development, designs, products, services, finances, marketing plans, and other information not known to the general public whether acquired or developed by Consultant during his performance of this Agreement or obtained from Company employees; nor will Consultant, either during or subsequent to the term of this Agreement, directly or indirectly disclose or publish any such information without prior written authorization from Company to do so.

7.2    Return of Information.  Consultant will return to Company any Company property that has come into Consultant's possession during the term of this Agreement, when and as requested to do so by Company and in all events upon termination of Consultant's engagement hereunder. Consultant will not remove any Company property from Company premises without written authorization from Company. The product of all work performed under this Agreement, including reports, drawings, computer programs and designs shall be the property of Company, and Company shall have the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such work product.

Section 8.    Representations and Warranties. Consultant represents and warrants that (a) the Materials will not infringe upon the Intellectual Property Rights or other rights of any person or entity; (b) Consultant is and at all times will remain possessed of all rights necessary to enter into and fully perform all of Consultant's obligations under this Agreement; (c) Consultant possesses the requisite skill and experience necessary to fully perform all of Consultant's obligations under this Agreement; (d) Consultant's entering into and fulfilling the obligations of this Agreement does not and will not infringe on the rights of any person or entity;

2

and (e) Consultant will diligently and competently perform all services set forth herein. Consultant hereby agrees to indemnify and hold Company harmless for all claims, losses, expenses, damages and other costs of any kind or nature, including attorneys' fees and costs, arising from Consultant's breach of this Agreement or any of its representations or warranties made herein.

      Section 9.    <u>Miscellaneous</u>.

      9.1    <u>Notices</u>.  Any notice or other document to be given hereunder by any party hereto to any other party hereto shall be in writing and delivered in person or by courier, electronically by facsimile or sent by any express mail service, postage or fees prepaid at the following addresses:

If to Consultant, to:

**Matthew Hayden**
**240 Via Rancho**
**San Clemente, CA 92672**
**matt.hayden@seapurity.us**

If to the Company, to:

Gunbroker.com
PO Box 2511
Kennesaw, GA 30156
Attention: Steve Urvan, CEO

or at such other address or number for a party as shall be specified by like notice.  Any notice which is delivered in the manner provided herein shall be deemed to have been duly given to the party to whom it is directed (a) on the day when personally served, including delivery by express mail and overnight courier, and (b) on the business day of confirmed transmission by telecommunications device.

      9.2    <u>Entire Agreement</u>. This Agreement is intended by the parties hereto to be the final expression of their agreement with respect to the subject matter hereof and is the complete and exclusive statement of the terms thereof.   This Agreement supersedes and terminates all prior agreements, arrangements and understandings between or among the Company and Consultant with respect to the subject matter hereof.

      9.3    <u>Amendment; Waiver</u>.  This Agreement may not be modified, amended or waived in any manner except by an instrument in writing signed by both parties hereto.  The waiver by either party of compliance with any provision of this Agreement by the other party shall not operate or be construed as a waiver of any other provision of this Agreement, or of any subsequent breach by such party of a provision of this Agreement.

      9.4    <u>Governing Law</u>.  This Agreement shall be deemed to be made in, and in all respects shall be interpreted, construed, and governed by and in accordance with, the laws of the State of California.

      9.5    Arbitration: Except as provided by the Act of this Agreement, Arbitration shall be the Sole, Exclusive and Final Remedy for any dispute between consultant and the Company. Accordingly, except as provided for by the act and this agreement, neither the consultant nor the company will be permitted to pursue court action regarding claims that are subject to arbitration.

310919058.1

9.6     Scope of Agreement. This Agreement shall bind and inure to the benefit of the Company and its successors and assigns and of Consultant and its successors.

9.7     No Conflicts.  Consultant represents and warrants to the Company that, at all times during the term of this Agreement, Consultant's performance of the services contemplated by this Agreement shall not conflict with any agreement, commitment or obligation on the part of Consultant to any employer or other third party.

9.8     Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed on the day and year first written above.

Gunbroker.com


By:_____
**Name: Steve Urvan**
Title: Chief Executive Officer


Consultant


_____
**Matthew Hayden**

NOT A CERTIFIED COPY

EXHIBIT 1 = THE Target List of Contacts Made on Behalf of Gunbroker.com by Matthew Hayden per the Consulting Agreement dated June 1, 2020 and will be expanded with each outreach.

Ben Chelovich,  Oakmont, a multi-strategy Single Family Office (estimated assets $4B). They are focused on doing less deals but larger in size ($50M is smallest but prefer much larger). They recently completed an investment in the weapons space and stated that if they wanted to pursue Gunbroker further they will share that information. Looking for a one-page summary.

- Managed Funds: LP positions with 18 managers (across various vintages within these managers) and strategies ranging from venture to buyout.
- Real Estate: Not a focus area, but we do have commercial and residential properties concentrated on the West Coast. And we are in the midst of perhaps Oakmont's largest real estate project to date - a master plan hospitality/residential development in Cabo.
- Direct Investments: Definitely our focus. Historically, Oakmont has done a lot of deals in "old economy" (industrial, energy). But over the past five years, we have really become more diversified (consumer, technology, healthcare, etc.). We look opportunistically across growth equity to late stage. The only area where we do not play is early stage.

Jeff Schaffer, Chris and David – Five Crowns Capital (www.fivecrownscapital.com) sponsors buyouts of small to middle size companies with a captive pool of capital.  They prefer companies where you have quality business models and management but for whatever reason Main Street is not aggressively competing. Gunbroker fits this desire.

Jeff and I have known each other for several years and he is a straight shooter, get it done kind of guy. His high-level suggestion (assuming you pull off merger target and $45M of EBITDA is a solid number for 2020) was $100M cash to the sellers (in addition to taking out $55M in debt), you get to retain control and no PGs.  Sounds like a great starting point for the conversation.

SPACs – have communicated with

1) GX Acquisition – Contact with Jay Bloom - Management discussed with key shareholders who took a pass.
2) Gil Ottensoser – BTIG Capital Markets who have completed 10 of the 44 SPACs which raised capital in the past year.  He is close with all management teams and the investor base and understands which ones would be prospective candidates.
3) Eric Gomberg – Odeon Capital Markets which has raised funds for several of the smaller SPACs and has 1 in particular he believes could be a fit. Need

Filing # 136734324 E-Filed 10/18/2021 12:32:48 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

MATTHEW HAYDEN,                                    CASE NO.:

      Plaintiff,

vs.

STEVEN F. URVAN,

      Defendant.

_____/

**SUMMONS:**
**PERSONAL SERVICE ON AN INDIVIDUAL**
**IMPORTANT**

TO:   Steven F. Urvan
      961 Fern Drive
      Delray Beach, Florida 33483

A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint in this Court, a telephone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the telephone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court (Clerk of Court, Palm Beach County, 205 N Dixie Hwy, West Palm Beach, FL 33401, Attn: Circuit Civil Filing Clerk), **you must also mail, e-mail or fax copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below**.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, ypresentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.

Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

### **IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Matthew P. McLauchlin., Esq.
Eavenson, Fraser & Lunsford, PLLC
4230 Pablo Professional Court, Suite 250
Jacksonville, FL  32224
Telephone: 904/567-1062
Facsimile: 904/567-1065
Primary E-mail: matt@efli.law
Secondary E-mail: sarah@efli.law

**THE STATE OF FLORIDA:**

**TO EACH SHERIFF OF THE STATE:**   You are commanded to serve this Summons and

Complaint in this lawsuit on the above-named Defendant.

Dated: _____

                                          **Joseph Abruzzo,** Palm Beach County Clerk of
the Circuit Court and Comptroller

                                          By: _____
                                                Deputy Clerk

[SEAL]

NOT A CERTIFIED COPY

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

ADMINISTRATIVE ORDER 3.107
**(Correcting scriveners error)**

IN RE:   ADOPTION AND IMPLEMENTATION OF
CIVIL DIFFERENTIATED CASE MANAGEMENT PLAN
FOR CASES FILED ON OR AFTER APRIL 30, 2021

_____

The Florida Supreme Court has directed that in order to maximize the resolution of cases, every circuit must implement a differentiated case management plan for handling civil cases. Fla. Admin. Order AOSC20-23, Amendment 10 (Fla. March 9, 2021) (available at https://www.floridasupremecourt.org/content/download/724015/file/AOSC20-23-Amendment-10.pdf). This plan must go into effect on April 30, 2021, and must require the presiding judge for each civil case filed on or after that date to actively manage civil cases in a specified manner.

**NOW, THEREFORE**, pursuant to the authority conferred by Florida Rule of General Practice and Judicial Administration 2.215, it is **ORDERED** as follows:

1.   Effective April 30, 2021, there is established within the Fifteenth Judicial Circuit a Civil Differentiated Case Management Plan applicable to all newly filed circuit and county civil cases, excluding cases subject to summary procedure and small claims case types unless the civil rules have been invoked. This Plan, which is attached hereto, requires judges to hold a case management hearing in each civil case within 30 days from the service deadline.[1] Following that hearing, the judge is required to assign the case to a defined track and issue a corresponding case management order. Subject to the presiding judge's approval, a hearing is not necessary in cases where parties file an agreed case management plan prior to the initial case management hearing or if the judge determines that a case management order can be entered without a hearing.

2.   All Agreed Case Management Plans submitted by the parties pursuant to the Plan shall be docketed by the Clerk of the Circuit Court with a DCMAP docket designator. Orders Accepting Agreed Case Management Plans shall be docketed by the Clerk of the Circuit Court with a DCMAO docket designator. Orders Implementing Case Management Plan absent party agreement shall be docketed by the Clerk of the Circuit Court with a DCMOI docket designator.

_____

[1] Per Florida Rule of Civil Procedure 1.070(j), the deadline for effectuating service of initial process is 120 days from the date the complaint is filed. Therefore, unless the time for service has been extended by court order, case management hearings will occur within 150 days from the date the case was filed.

Fifteenth Judicial Circuit

Civil Differentiated Case Management Plan

2021



**Table of Contents**

I.      Purpose
II.     Scope
III.    Civil Case Tracks – **Definitions & Guidelines**
        a.  Complex
        b.  General
        c.  Streamlined
        d.  Expedited
        e.  Model Timeframes
IV.     Case Management Procedures
V.      Model Forms
        a.  Standing Order for County Court
        b.  Standing Order for Circuit Court
        c.  Sample Agreed Case Management Plan
        d.  Sample Order Approving  Agreed Case Management Plan
        e.  Sample Case Management Report

NOT A CERTIFIED COPY

## I.     Purpose

The Fifteenth Circuit Differentiated Case Management Plan ("Plan") is being implemented upon order of the Florida Supreme Court. Fla. Admin. Order AOSC20-23, Amendment 10 (Fla. March 9, 2021). The Plan seeks to implement differentiated case flow management procedures for the purpose of ensuring that newly filed civil cases are resolved as close to the model time frames set forth in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B) as possible.

## II.     Scope

This Plan applies to all civil cases filed in both the county and circuit court in Palm Beach County on or after April 30, 2021. For purposes of this Plan, the term "civil case" means any civil case where, as identified in Florida Rule of Civil Procedure 1.010, the Florida Rules of Civil Procedure apply. It also includes actions in which the Court has ordered that the action proceed under one or more of the Florida Rules of Civil Procedure pursuant to Florida Small Claims Rule 7.020(c). It does not include cases that are subject to the:

- Rules of Small Claims
- Rules of Family Law
- Rules of Probate

It also does not include cases that require or permit summary procedure. Summary procedure cases include

- Actions to recover possession of real property under chapter 82, Florida Statutes (residential evictions)
- Landlord actions to remove tenants under section 83.59, Florida Statutes (unlawful detainer)
- Certain actions to enforce liens on real and personal property under chapter 85, Florida Statutes (*See,* § 85.011, Fla. Stat.)
- Certain condominium actions under chapter 718, Florida Statutes (*See,* § 718.116(8)(e), Florida Statutes)
- Actions to remove mobile home owners or mobile homes under section 723.061, Florida Statutes; and
- Certain regulatory actions, such as Department of Health disciplinary actions and licensure denials under sections 483.825(1)(*l*) and 490.009(1)(p), Florida Statutes.

## III.     Civil Case Tracks – Definition & Guidelines

### a.     Complex  Case Track

   i. **Overview and Manner of Assignment:** The complex case track involves those cases with extraordinary complexity as to require or benefit from early intervention and individual judicial management. Complex cases are defined by

Florida Rule of Civil Procedure 1.201.  Cases may only be assigned to the complex case track in one of two ways:

1. Motion or stipulation by the parties <u>with court approval</u>. Fla. R. Civ. P. 1.201(a)

**or**

2. Designation by the Court on its own Motion following a case review.  Fla. R. Civ. P. 1.201.

ii. **Types of Cases:** Examples of case types that may be appropriate for the complex case track are:

- Class Actions
- Environmental/Toxic Torts
- Mass torts
- Antitrust/Trade Regulation
- Medical Malpractice
- Nursing Home Negligence
- Securities Litigation
- Tobacco

iii. **Case Management Process:** Cases that are designated as complex will be set for a case management conference by the assigned judge within 60 days from the complex track designation and will follow the procedures set forth in Rule 1.201 thereafter.

**b. <u>General Case Track</u>**

The general case track encompasses the large majority of civil cases.  General cases require a moderate level of judicial case management to reach timely resolution unless unusual pretrial delays arise.  Most circuit civil cases with a demand for jury trial will fall into the general case track.  General cases may include:

- Contracts and Indebtedness
- Auto Negligence
- Premises Liability

**c. <u>Streamlined Case Track</u>**

Streamlined cases are those cases normally requiring little judicial intervention with relatively simple procedural and legal issues that can be resolved promptly by early referral to mediation/ADR or expedited hearing.  Streamlined cases may include:

- County Court Civil Cases
- Contested Commercial Foreclosures
- Circuit Non-jury Cases
- First Party Insurance Claims

### d. **Expedited Case Track**

Expedited cases are those requiring the least amount of judicial intervention. Expedited cases may include:

- Contested Residential Foreclosures
- Ejectments
- Uncontested Cases
- PIP Cases

### e. **Model Time Frames**

Per the guidelines set forth in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B) and Florida Rule of Civil Procedure 1.201(b)(3) as well the Circuit's historical data, case management plans should be based on the following model time frames from filing to disposition:

- **Complex:** 24 months
- **General:** 18 months
- **Streamlined:** 12 Months
- **Expedited:** 8 Months

## IV.   Case Management Procedures

i.   **Standing Order for Case Management Procedures:** In all civil cases, the Clerk will provide plaintiffs seeking a summons with the applicable Standing Order for Case Management and Request for Agreed Case Management Plan. Plaintiffs should serve this order on all parties along with a copy of the Complaint. If the parties are unable to agree on an Agreed Case Management Plan as outlined in the Standing Order by the applicable deadline, the case will proceed as outlined below. Matters that arise out of the parties' attempts to agree on an Agreed Case Management Plan will **not** be heard at the Court's Uniform Motion Calendar.

ii.   **Assignment to Complex Track**: If, on motion of the parties or the Court, the case is assigned to the complex track, the case will be set for a case management hearing within 60 days from designation and will follow the procedures set forth in Rule 1.201 thereafter.

iii.   **Initial Review for Service:** In all other civil cases, case managers will review pleadings and case events 90 days after filing for identification of proper service of all

named defendants.  In cases where summons(es) have been issued but there has not been proper service or a responsive pleading filed by defendant(s), case managers will prepare Order(s) to Serve.

iv. **Dismissal for Lack of Service/Scheduling of Case Management Hearing or Issuance of an Order Implementing a Case Management Plan**: Case managers will review pleadings and case events 120 days after filing for identification of proper service and the filing of an Agreed Case Management Plan.

    a. For cases where there is no proper service or a responsive pleading filed by defendant(s) at 120 days and there was previously an Order to Serve issued, case managers will prepare an Order of Dismissal for Lack of Service.

    b. For cases where there has been proper service on at least one defendant but the parties have not submitted an Agreed Case Management Plan, case managers will notify the assigned judge that the parties have not complied with the applicable Standing Order.  The Court will then either schedule a case management hearing or issue an Order Implementing Case Management Plan without agreement of the parties within 150 days from the date of filing the complaint.  Each order setting a matter for case management hearing will require the parties to submit a Case Management Report to the presiding judge no later than 10 days prior to the scheduled case management hearing.  Each order implementing a case management plan without a hearing must include the information outline in subsection v., below.

v. **Case Management Hearing:** At the scheduled case management hearing, the Court will determine whether the case should be assigned to the general, streamlined, or expedited track and will enter a corresponding case management order.  The case management order must, at minimum, specify:

- o Deadlines for
  - ▪ Service of complaints
  - ▪ Service under extensions
  - ▪ Adding new parties
  - ▪ Amending pleadings
  - ▪ The completion of fact and expert discovery
  - ▪ The resolution of objections to pleadings
  - ▪ The filing of pretrial motions
  - ▪ Completion of mediation
- o A projected date of trial
- o Whether the parties are seeking a jury trial or non-jury trial
- o Estimated amount of time required for trial

Additionally, each order must indicate that the deadlines established will be strictly enforced by the Court and that a firm trial date will be ordered by the presiding judge when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440.

vi.   **Opting Out of Case Management Hearing**: Parties may opt out of attending the case management hearing by submitting an Agreed Case Management Plan and Order Approving Agreed Case Management Plan for the Court's approval and signature within 130 days of the date of the filing of the complaint.  Any Agreed Case Management Plan should specify:

- The case track
- Deadlines for
  - o Service of complaints
  - o Service under extensions
  - o Adding new parties
  - o Amending pleadings
  - o The completion of fact and expert discovery
  - o The resolution of objections to pleadings
  - o The filing of pretrial motions
  - o Completion of mediation
- Whether the parties are seeking a jury trial or non-jury trial
- The amount of time required for trial
- A projected date the parties will be prepared to proceed to trial

The Agreed Case Management Plan should be attached in PDF format to a proposed Order Approving Agreed Case Management Plan and submitted to the divisional queue through the Circuit's OLS system.  If the case was already scheduled for a Case Management Hearing at the time the Agreed Case Management Plan is submitted, the proposed Order Accepting Agreed Case Management Plan should also cancel the Case Management Hearing and will include the date and time of the hearing in the title and again in the body of the order.

If a case management hearing is set and the parties do not opt out by filing an Agreed Case Management Plan, attendance at the hearing by trial counsel an those parties who are not represented is mandatory.

vii.   **Conversion of Small Claims Cases to Civil Cases**.  When the parties to a small claims case (including Personal Injury Protection cases) file a Stipulation to Invoke the Rules of Civil Procedure, the case will be considered a civil case for purposes of the Plan.  To ensure compliance with the Plan, the parties should file:

- Stipulated Order to Invoke the Rules of Civil Procedure
- A completed Agreed Case Management Plan
- Order Approving Agreed Case Management Plan

NOT A CERTIFIED COPY

IN THE COUNTY COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

IN RE: STANDING ORDER FOR
CASE MANAGEMENT FOR SUBMISSION
OF AGREED CASE MANAGEMENT PLAN FOR
CASES FILED ON OR AFTER APRIL 30, 2021

_____/

### STANDING ORDER FOR CASE MANAGEMENT AND SUBMISSION OF AGREED CASE MANAGEMENT PLAN IN COUNTY CIVIL CASES IN THE PALM BEACH COUNTY COURT FILED ON OR AFTER APRIL 30, 2021 (DCMSO)

Pursuant to Florida Rule of Civil Procedure 1.200(a), Florida Rule of General Practice and Judicial Administration 2.545, and Administrative Order 3.107 entered by the Chief Judge of this Circuit, the parties are informed of the following information and procedures applicable to civil lawsuits filed on or after April 30, 2021:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this Order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases, the parties are required to participate in the case management system. The case management system requires early consultation and cooperation among the parties for the preparation and submission of an Agreed Case Management Plan and early involvement by the Court. The Agreed Case Management Plan requires the parties to identify a case track, confer in a good faith and attempt to narrow the matters in controversy, identify the issues that require direct involvement by the Court, and establish a schedule for addressing those issues.[1] The Agreed Case Management Plan may be accessed at the Court's website at: https://15thcircuit.com/civil-differentiated-forms-and-orders.

Unless all of the Defendants have been served and have been defaulted or dropped, an Agreed Case Management Plan must be submitted to the assigned divisional queue via the Court's online scheduling system (OLS) as an attachment, in PDF format, to a proposed Order Accepting Agreed Case Management Plan on or before 130 days from the date of filing of the initial complaint. If

---

[1] Case Track options include Expedited, Streamlined, General, or Complex. Case Tracks have been established in order to comply with the case disposition standards set forth in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).

the parties are unable to agree on an Agreed Case Management Plan by the applicable deadline, a case management conference will be scheduled by the Court or the Court will review and issue an Order Implementing Case Management Plan without agreement of the parties. No matters that arise as a result of this standing order, including lack of agreement, will be set on the Court's Uniform Motion Calendar and will, instead, be settled by the Court either at the case management conference or via an Order Implementing Case Management Plan without agreement of the parties. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory.

If all Defendants are served and defaulted or dropped, the Plaintiff will file the appropriate documentation to pursue a Default Final Judgment within 130 days of the filing of the complaint and Final Judgment is to be entered or set for hearing within 150 days of the filing of the complaint.

      3. **NON-APPLICABILITY TO SMALL CLAIMS CASES.** The above outlined civil case management system does not apply to cases proceeding under the Florida Rules of Small Claims. However, when parties to a small claims case (including Personal Injury Protection cases) file a Stipulation to Invoke the Rules of Civil Procedure, the civil case management system will apply. Therefore, parties to small claims cases who invoke the Rules of Civil Procedure should submit an Agreed Case Management Plan and Order Approving the Agreed Case Management Plan as outlined above along with their Stipulation to Invoke the Rules of Civil Procedure.

      4. **MEDIATION/ALTERNATIVE DISPUTE RESOLUTION (ADR).** ADR provides parties with an out-of-court alternative to settling disagreements. Mediation is a type of ADR wherein an independent third party attempts to arrange a settlement at a conference between the parties. The Court requires the parties to participate in Mediation prior to trial unless the parties agree to another form of ADR.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Florida, on this 26th day of April, 2021.

                                  _____

                                  **Administrative County Judge**

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

IN RE: STANDING ORDER FOR
CASE MANAGEMENT FOR SUBMISSION
OF AGREED CASE MANAGEMENT PLAN FOR
CASES FILED ON OR AFTER APRIL 30, 2021

_____/

**STANDING ORDER FOR CASE MANAGEMENT AND SUBMISSION OF AGREED
CASE MANAGEMENT PLAN IN CIVIL CASES
IN THE FIFTEENTH JUDICIAL CIRCUIT FILED ON OR AFTER APRIL 30, 2021
(DCMSO)**

Pursuant to Florida Rule of Civil Procedure 1.200(a), Florida Rule of General Practice and Judicial Administration 2.545, and Administrative Order 3.107 entered by the Chief Judge of this Circuit, the parties are informed of the following information and procedures applicable to civil lawsuits filed in the Circuit Court on or after April 30, 2021:

1.  **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this Order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service.

2.  **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases, the parties are required to participate in the case management system. The case management system requires early consultation and cooperation among the parties for the preparation and submission of an Agreed Case Management Plan and early involvement by the Court. The Agreed Case Management Plan requires the parties to identify a case track, confer in good faith and attempt to narrow the matters in controversy, identify the issues that require direct involvement by the Court, and establish a schedule for addressing those issues.[1] The Agreed Case Management Plan may be accessed at the Court's website at: https://15thcircuit.com/civil-differentiated-forms-and-orders.

Unless all of the Defendants have been served and have been defaulted or dropped, an Agreed Case Management Plan must be submitted to the assigned divisional queue via the Court's online scheduling system (OLS) as an attachment, in PDF format, to a proposed Order Accepting Agreed Case Management Plan on or before 130 days from the date of filing of the initial complaint. If the parties are unable to agree on an Agreed Case Management Plan by the applicable deadline, a

_____

[1] Case Track options include Expedited, Streamlined, General, or Complex. Case Tracks have been established in order to comply with the case disposition standards set forth in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).

case management conference will be scheduled by the Court or the Court will review and issue an Order Implementing Case Management Plan without agreement of the Parties.  No matters that arise as a result of this standing order, including lack of agreement, will be set on the Court's Uniform Motion Calendar and will, instead, be settled by the Court either at the case management conference or via an Order Implementing Case Management Plan without agreement of the parties. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory.

If all Defendants are served and defaulted or dropped, the Plaintiff will file the appropriate documentation to pursue a Default Final Judgment within 130 days of the filing of the complaint and Final Judgment is to be entered or set for hearing within 150 days of the filing of the complaint.

3. **MEDIATION/ALTERNATIVE DISPUTE RESOLUTION (ADR).**   ADR provides parties with an out-of-court alternative to settling disagreements.  Mediation is a type of ADR wherein an independent third party attempts to arrange a settlement at a conference between the parties. The Court requires the parties to participate in Mediation prior to trial unless the parties agree to another form of ADR.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, on this 26 day of April, 2021.

15TH JUDICIAL CIRCUIT
ADMINISTRATIVE OFFICE OF THE COURT

**Administrative Circuit Judge**

**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

Plaintiff(s),

v.                                                        Case No.

Defendant(s)
_____/

<u>AGREED CASE MANAGEMENT PLAN
(DCMAP)</u>

The parties hereby submit the following Agreed Case Management Plan to the Court for approval:

**Case Track Assignment[1] (check one):**

_____        **Expedited Track (Case resolved within 8 months)**
              (It is recommended that discovery and an alternative dispute
              resolution/mediation be completed within 180 days after the complaint
              is filed and a final disposition entered within 245 days after the
              complaint is filed)

_____        **Streamlined Track (Case resolved within 12 months)**
              (It is recommended that discovery and an alternative dispute
              resolution/mediation be completed within 270 days after the complaint
              is filed and a final disposition entered within 365 days after the
              complaint is filed)

_____        **General Track (Case resolved within 18 months)**
              (It is recommended that discovery and an alternative dispute
              resolution/mediation be completed within 450 days after the
              complaint is filed and a final disposition entered within 540 days after
              the complaint is filed)

              **Complex Track (Case resolved within 2 years)**
              (This track cannot be selected without a hearing and order granting motion
              to designate the case as complex per Florida Rule of Civil Procedure
              1.201)

_____

[1] Case disposition times for all Case Tracks have been established based on Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B) and the Circuit's historic data. Although General and Complex Track cases may or may not be resolved with a jury trial, it is expected that Streamlined and Expedited Track cases will be resolved without a jury trial.

## Case Deadlines and Events

| DEADLINE OR EVENT | AGREED DATE |
|---|---|
| **Service of Unserved Parties**<br>Plaintiff(s):<br><br>Cross/Counter Plaintiffs: | |
| **Motions to Add Parties or to Amend Pleadings**<br>Plaintiff(s):<br><br>Defendant(s): | |
| **Resolution of Objections to Pleadings and Pretrial Motions** (All motions to dismiss, quash service, strike affirmative defenses or extend the time to answer or respond to a pleading must be heard by this date)<br><br>Plaintiff(s):<br><br>Defendant(s): | |
| **Discovery Deadline for Fact Witnesses**<br>(All discovery must be commenced in time to be completed before this date)<br><br>Plaintiff(s):<br><br>Defendant(s): | |
| **Discovery Deadline for Expert Witnesses** (All discovery must be commenced in time to be completed before this date)<br><br>Plaintiff(s):<br><br>Defendant(s): | |
| **Completion of Alternative Dispute Resolution (ADR)**<br>(Mediation is mandatory unless the parties agree to another form of ADR).<br><br>Deadline:<br><br>Type of ADR: | |
| **Other Deadlines or Events** | |

**Trial Information**

| | |
|---|---|
| **Is this Case At Issue pursuant to Rule 1.440? (Yes or No)** | |
| **Estimated Date the Case Will Be Prepared To Go To Trial [PLEASE READ FOOTNOTE BEFORE COMPLETING]²** (If counsel and unrepresented parties do not agree on the estimated date on which the case will be prepared to go to trial, the Court may set the case for trial on its own motion) | **Plt date:** <br><br> **Deft date:** <br><br> **Agreed:** <br> **Yes or No** |
| **Estimated Length of Trial** *(specify the number of trial days):* | |
| **Identification of Jury or Non-Jury Trial** | |

(remainder of page intentionally left blank)

---

² For retroactive cases pending prior to April 30, 2021, the estimated date the case will be prepared to go to trial should not exceed the disposition time frame for the chosen case track. Cases that have been pending longer than the corresponding case track disposition time frame must follow the following time frames:

| Case Track | Age of Case | Estimated Date of Trial |
|---|---|---|
| Expedited | More than 8 months | Within 4 Months |
| Streamlined | 12-18 Months | Within 6 Months |
| | More than 18 months | Within 4 Months |
| General | 18-24 Months | Within 6 Months |
| | More than 24 Months | Within 4 Months |

The above-referenced schedule of deadlines will be strictly adhered to by the parties unless a change is otherwise agreed to by the parties and approved by the Court. The Court will consider a request to approve changes to these deadlines upon a showing of good cause by either party based on matters arising from an emergency nature or unavailability. However, once the Agreed Case Management Plan has been approved by the Court, procrastination in completing discovery or the unavailability of counsel will not constitute good cause for a change to these deadlines. The failure to abide by these deadlines may result in sanctions by the Court, including the award of attorney's fees, the striking of pleadings, and/or a dismissal of the action.

*Date:* _____

*Signature, address and telephone number of Counsel and Unrepresented Parties.  Counsel must state*

*Fl Bar number:*

PLAINTIFF'S COUNSEL _____     Or, if unrepresented, PLAINTIFF _____
Address _____        Address_____
Telephone #_____        Telephone #_____
E-Mail Address _____        The Plaintiff(s) is registered to receive
Florida Bar #_____         eservice at_____
DEFENDANT'S PRINTED NAME _____


DEFENDANT'S COUNSEL _____     or, if unrepresented, DEFENDANT _____
Address _____        Address_____
Telephone #_____ - _____         Telephone #_____
E-Mail Address _____        The Defendant(s) is registered to receive
Florida Bar #_____         eservice at _____


CONFORMED COPIES TO:

# IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

Plaintiff(s),

v.                                          Case No.

Defendant(s) _____/

## PLAINTIFF'S NOTICE OF EMAIL DESIGNATION

I hereby designate my e-mail address(es) below to opt into e-service in this case. By signing this stipulation I am authorizing the Court, the Clerk of the Fifteenth Judicial Circuit of Florida and all parties on this case to send copies of orders/judgments, notices or other written communications or pleadings to me through my designated e-mail and NOT through regular mail. I understand that if I designate an email address, that address will be the exclusive means of serving and receiving documents.

By signing, I am opting into e-service at _____

secondary email (optional) _____

_____
UNREPRESENTED PLAINTIFF print name

Address_____ – _____.

Telephone #_____.

**This document should be filed  or e-filed with the Clerk of Court separately**

# IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
# IN AND FOR PALM BEACH COUNTY, FLORIDA

**Plaintiff(s),**

**v.**                                                  **Case No.**

**Defendant(s)**

_____/

## DEFENDANT'S NOTICE OF EMAIL DESIGNATION

I hereby designate my e-mail address(es) below to opt into e-service in this case. By signing this stipulation I am authorizing the Court, the Clerk of the Fifteenth Judicial  Circuit of Florida and all parties on this case to send copies of orders/judgments, notices or other written communications or pleadings to me through my designated e-mail and NOT through regular mail. I understand that if I designate an email address, that address will be the exclusive means of serving and receiving documents.


By signing, I am opting into e-service at _____
.

                                            _____
                                            UNREPRESENTED PLAINTIFF print name

                                            Address_____.

                                            Telephone #_____.


**Copies can be made of this document for each defendant and should be filed or e-filed with the Clerk of Court separately**

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

Plaintiff(s),

v.                                              Case No.

Defendant(s)

_____ /

### ORDER APPROVING AGREED CASE MANAGEMENT
### PLAN AND ORDER SETTING HEARING
### (DCMAO)

**THIS CAUSE** came before the Court upon the Agreed Case Management Plan submitted by the parties.  Having reviewed the Agreed Case Management Plan and finding it to be satisfactory, it is hereby

**ORDERED** that the Agreed Case Management Plan is hereby **APPROVED AND ALL PARTIES SHALL ABIDE BY THE TERMS THEREIN.** It is further

**ORDERED** that the case shall be set for a hearing on_____ , 202__ at_____ . _a.m./p.m._  At this hearing, the parties will discuss trial readiness and the Court will issue a Trial Order and place the case on a Trial Docket no less than 30 days from the date of this hearing.  All deadlines set forth in the Case Management Plan will be strictly enforced to ensure trial readiness.

**DONE AND ORDERED** in Palm Beach County, _____ , Florida.

NOT A CERTIFIED COPY

**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

Plaintiff(s),

vs.                                              Case No.

Defendant(s).

<u>JOINT CASE MANAGEMENT REPORT</u>

The parties hereby submit the following Joint Case Management Report for the Court's consideration:

**Pleading Status**

    Provide a brief summary of the facts and theor(ies) of liability and/or defenses:_____

_____

_____

_____

    Is the Case at Issue? (Y/N, Refer to Florida Rule of Civil Procedure 1.440(a)):

_____

    The following motions are currently open (name of motion and date of filing):

_____

_____

_____

**Status of Outstanding Discovery**

    The following discovery requests are outstanding (for each request, identify: the date propounded, the date of response, whether objections have been filed, the date the parties met and conferred about objections, whether privilege has been raised, and the date a privilege log was filed):_____

_____

_____

_____

    The following discovery motions are outstanding (name of motion and date of filing):_____

_____

_____

Are additional interrogatories, request to produce, or requests to admit anticipated? _____

If yes, in what form and by when:_____

**Fact Discovery**

The following fact witness depositions have been taken/are planned (provide name and date):_____

_____

**Expert Discovery**

The deadline for expert disclosure was/is: _____

The deadline for any planned examinations or inspections was/is:_____

The following expert witness depositions have been taken/are planned (provide name and date):_____

_____

The deadline for the exchange of expert reports/discovery was/is:_____

**Dispositive Motions Anticipated and Brief Scheduled for Such Motions (list):**

_____

_____

_____

_____

**Mediation Efforts**

Mediation has been held or has been scheduled (Y/N and date): _____

If yes, provide the name of the chosen mediator: _____

If no, provide the mediation deadline:_____

**Trial Readiness:**

Type of trial requested (bench/jury): _____

The parties will be ready for trial by (date): _____ .

_____                    _____
**s/Plaintiff's Counsel**                                      **s/Defense Counsel**

NOT A CERTIFIED COPY



**JOSEPH ABRUZZO**

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

# RECEIPT
4216111

Printed On:
10/18/2021 02:35
Page 1 of 1

| Receipt Number: 4216111 - Date 10/18/2021  Time 2:35PM | | | |
|---|---|---|---|
| **Received of:** | Matthew McLauchlin<br>4300 Lakeside Drive<br>Jacksonville, FL 32210 | | |
| **Cashier Name:** | ADMIN | **Balance Owed:** | 411.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 411.00 |
| **Receipt ID:** | 10556578 | **Remaining Balance:** | 0.00 |
| **Division:** | AH: Circuit Civil Central - AH(Civil) | | |

| Case# 50-2021-CA-011678-XXXX-MB -- PLAINTIFF/PETITIONER: HAYDEN, MATTHEW | | | |
|---|---|---|---|
| Item | Balance | Paid | Bal Remaining |
| Fees | 411.00 | 411.00 | 0.00 |
| **Case Total** | **411.00** | **411.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| EFiling_CREDITCARD | 32596191 | **411.00** |
| **Total Received** | | **411.00** |
| **Total Paid** | | **411.00** |

**How was your service today?**  Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.
**For office locations and information about Clerk & Comptroller services:**
Visit www.mypalmbeachclerk.com or call (561) 355-2996.



IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

MATTHEW HAYDEN,

      Plaintiff,

CASE NO.: 50-2021-CA-011678-XXXX-MB

vs.

STEVEN F. URVAN,

      Defendant.

_____/

**SUMMONS:**
**PERSONAL SERVICE ON AN INDIVIDUAL**
**IMPORTANT**

TO:   Steven F. Urvan
      961 Fern Drive
      Delray Beach, Florida 33483

    A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached Complaint in this Court, a telephone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the telephone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court (Clerk of Court, Palm Beach County, 205 N Dixie Hwy, West Palm Beach, FL 33401, Attn: Circuit Civil Filing Clerk), **you must also mail, e-mail or fax copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below**.

**IMPORTANTE**

    Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, ypresentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.

NOT A CERTIFIED COPY

Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## **IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Matthew P. McLauchlin., Esq.
Eavenson, Fraser & Lunsford, PLLC
4230 Pablo Professional Court, Suite 250
Jacksonville, FL  32224
Telephone: 904/567-1062
Facsimile: 904/567-1065
Primary E-mail: matt@efli.law
Secondary E-mail: sarah@efli.law

**THE STATE OF FLORIDA:**

**TO EACH SHERIFF OF THE STATE:**   You are commanded to serve this Summons and

Complaint in this lawsuit on the above-named Defendant.

Dated:   **Oct 20 2021**



**Joseph Abruzzo,** Palm Beach County Clerk of
the Circuit Court and Comptroller

By: _____

Deputy Clerk   **JOSIE LUCCE**

[SEAL]

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

IN RE: STANDING ORDER FOR
CASE MANAGEMENT FOR SUBMISSION
OF AGREED CASE MANAGEMENT PLAN FOR
CASES FILED ON OR AFTER APRIL 30, 2021

_____/

## STANDING ORDER FOR CASE MANAGEMENT AND SUBMISSION OF AGREED CASE MANAGEMENT PLAN IN CIVIL CASES IN THE FIFTEENTH JUDICIAL CIRCUIT FILED ON OR AFTER APRIL 30, 2021 (DCMSO)

Pursuant to Florida Rule of Civil Procedure 1.200(a), Florida Rule of General Practice and Judicial Administration 2.545, and Administrative Order 3.107 entered by the Chief Judge of this Circuit, the parties are informed of the following information and procedures applicable to civil lawsuits filed in the Circuit Court on or after April 30, 2021:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this Order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases, the parties are required to participate in the case management system. The case management system requires early consultation and cooperation among the parties for the preparation and submission of an Agreed Case Management Plan and early involvement by the Court. The Agreed Case Management Plan requires the parties to identify a case track, confer in good faith and attempt to narrow the matters in controversy, identify the issues that require direct involvement by the Court, and establish a schedule for addressing those issues.[1] The Agreed Case Management Plan may be accessed at the Court's website at: https://15thcircuit.com/civil-differentiated-forms-and-orders.

Unless all of the Defendants have been served and have been defaulted or dropped, an Agreed Case Management Plan must be submitted to the assigned divisional queue via the Court's online scheduling system (OLS) as an attachment, in PDF format, to a proposed Order Accepting Agreed Case Management Plan on or before 130 days from the date of filing of the initial complaint. If the parties are unable to agree on an Agreed Case Management Plan by the applicable deadline, a

---

[1] Case Track options include Expedited, Streamlined, General, or Complex. Case Tracks have been established in order to comply with the case disposition standards set forth in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).

case management conference will be scheduled by the Court or the Court will review and issue an Order Implementing Case Management Plan without agreement of the Parties. No matters that arise as a result of this standing order, including lack of agreement, will be set on the Court's Uniform Motion Calendar and will, instead, be settled by the Court either at the case management conference or via an Order Implementing Case Management Plan without agreement of the parties. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory.

If all Defendants are served and defaulted or dropped, the Plaintiff will file the appropriate documentation to pursue a Default Final Judgment within 130 days of the filing of the complaint and Final Judgment is to be entered or set for hearing within 150 days of the filing of the complaint.

3. **MEDIATION/ALTERNATIVE DISPUTE RESOLUTION (ADR)**.   ADR provides parties with an out-of-court alternative to settling disagreements.  Mediation is a type of ADR wherein an independent third party attempts to arrange a settlement at a conference between the parties. The Court requires the parties to participate in Mediation prior to trial unless the parties agree to another form of ADR.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, on this 26 day of April, 2021.

15TH JUDICIAL CIRCUIT

ADMINISTRATIVE OFFICE OF THE COURT

**Administrative Circuit Judge**