UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cv-82051-MATTHEWMAN

MATTHEW HAYDEN,

           Plaintiff,

v.

STEVEN F. URVAN,

           Defendant.

_____/

**DEFENDANT'S TRIAL MEMORANDUM**

    Defendant, Steven F. Urvan, submits this memorandum to assist the Court in evaluating the issues and evidence at trial.

**I.      Introduction**

    This action arises from Plaintiff's attempt to collect a commission/finder's fee. Defendant owned a Nevada limited liability company called Gemini Direct Investments, LLC ("Gemini"), which owned the rights to an online marketplace (at the domain GunBroker.com) for firearms and related items. On April 30, 2021, SpeedLight Group I, LLC, a Delaware limited liability company that is wholly owned by Ammo, Inc. ("Ammo"), a publicly traded Delaware corporation, merged with Gemini in a transaction that included exchanges of ownership shares. An investment bank, Maxim Group, LLC ("Maxim"), introduced Gemini to Ammo and was paid a $4.24 million fee by Gemini. Plaintiff nevertheless claims Defendant **personally** owes a fee for services leading to Ammo acquiring "the Gunbroker.com business."

    Plaintiff claims Defendant was unjustly enriched by Plaintiff's introduction to Maxim. Plaintiff's claim is meritless. Defendant was not unjustly enriched, nor would it be "fair," "just," or "equitable" for Plaintiff to receive a commission, even if he were licensed (which he is not).

Defendant spent decades building the value of his business, then engaged an investment banking firm (and registered broker) to find a buyer. Meanwhile, Plaintiff claims sending a single email entitles him to a portion of the value of the transaction.

Plaintiff also did not procure a buyer, but, at best, introduced Defendant to an investment banker at Maxim. Further, Gemini paid Maxim a fee for the introduction to Ammo.

Notwithstanding Plaintiff's claim, as a matter of federal and Florida law, Plaintiff cannot receive a commission based on a securities transaction. Ammo's acquisition of Gemini and certain of its subsidiaries included the purchase and sale of securities (shares in the companies involved). Both federal and Florida law required Plaintiff to be a registered broker or dealer to be paid. Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") makes it unlawful for a person to "effect any transaction in, or to induce or attempt to induce" the purchase or sale of any security unless registered with the Securities and Exchange Commission in accord with Section 15(b). 15 U.S.C. § 78o(a)(1). Section 517.12, Florida Statutes, requires registration of persons selling securities to Floridians (such as Defendant). Even if Plaintiff's version of events were credible, compensating him would be unlawful.

Finally, Plaintiff has never established the market value of his alleged services or the reasonable value of those services to Defendant. Instead, Plaintiff has always based his damages claim on the terms of the unsigned agreement this Court deemed unenforceable. Plaintiff cannot establish damages. For these reasons, Plaintiff is not entitled to any compensation.

## II.     Anticipated Evidence

Defendant expects evidence of the following to be introduced at trial:

### General Background

1.     At all relevant times, Defendant was a resident of Palm Beach County, Florida.

2.     In 1999, Defendant created GunBroker.com, an online auction site/marketplace for

firearms and related items.

3.      Defendant spent over two decades developing the business and growing its value.

4.      The assets, including the domain and related intellectual property, making up GunBroker.com, were owned by Gemini, a Nevada limited liability company owned by Defendant, and its subsidiaries. Gemini's subsidiaries included IA Tech, LLC ("IA Tech") and GunBroker.com, LLC.

5.      GunBroker.com, LLC, owned no significant assets, including intellectual property or the domain name "GunBroker.com."

6.      Defendant began receiving investor interest in GunBroker.com as early as 2003.

7.      Maxim is an investment banking firm and a registered securities broker.

8.      Plaintiff is a resident of California.

9.      Plaintiff runs a "family office" at which he manages his portfolio of investments.

10.     Plaintiff has never received a fee or commission for the sale of a company.

11.     Plaintiff holds no federal or Florida licenses related to securities.

12.     Defendant and Plaintiff are business acquaintances who exchanged ideas, as each did with dozens to hundreds of their other business acquaintances, with no expectation of compensation.

13.     In 2020, Plaintiff raised the notion that GunBroker.com may be suitable for acquisition or monetization by use of a special purpose acquisition company ("SPAC").

14.     On March 26, 2020, Plaintiff suggested a "[g]o public event" for GunBroker.com.

**Defendant's Retention of Registered Professionals to Sell GunBroker.com**

15.     Gemini's board of directors considered several licensed investment banking firms to find a buyer and sale opportunity regarding GunBroker.com.

16.     In June 2020, Gemini retained licensed investment banking firm Houlihan Lokey

Capital, Inc. ("Houlihan Lokey") as its exclusive provider of financial advisory and investment banking services regarding a sale of GunBroker.com. The agreement's term was six months.

17.    After Gemini retained Houlihan Lokey, Plaintiff asked Defendant to retain Plaintiff to find a buyer for GunBroker.com, LLC.

18.    Defendant refused Plaintiff's request because, inter alia:

    a.  Seeking a buyer and negotiating a deal regarding the sale of GunBroker.com required an investment banking team, and Plaintiff was not part of such a team.

    b.  The party seeking and negotiating with potential buyers for GunBroker.com must be a registered securities broker, and Plaintiff was not registered.

    c.  Defendant's companies had an exclusive agreement with Houlihan Lokey for the sale of GunBroker.com.

19.    In its exclusive six-month term, Houlihan Lokey was unable to find a buyer, and Gemini notified Houlihan Lokey that the agreement would not be renewed.

20.    As the contract with Houlihan Lokey neared its end, Plaintiff connected Defendant with Christopher Fiore, a co-founder of Maxim and licensed broker, to assist Defendant in finding a SPAC for GunBroker.com.

21.    Defendant and Maxim concluded that a SPAC was not viable due to the polarizing nature of firearms, as SPAC acquisitions require shareholder involvement.

**Gemini Transaction**

22.    Maxim continued to contact Defendant about providing investment banking services relating to the sale of GunBroker.com, as opposed to a SPAC acquisition.

23.    On December 23, 2020, IA Tech and Maxim signed an agreement allowing Maxim to make introductions to IA Tech and its affiliates and subsidiaries "for the purpose of entering into a strategic partnership, merger, reverse merger, acquisition, or similar transaction."

24.     Christopher Fiore turned the transaction over to Larry Glassberg, another licensed investment banker at Maxim.

25.     Larry Glassberg introduced Gemini and its subsidiaries (including IA Tech) to Ammo, and Mr. Glassberg and his team assisted in negotiations between Ammo and Gemini regarding the sale of GunBroker.com.

26.     On April 30, 2021, SpeedLight Group I, LLC, a Delaware limited liability company that is wholly owned by Ammo, merged with Gemini in a transaction that included exchanges of ownership shares ("Gemini Transaction").

27.     Gemini paid Maxim a $4.24 million fee for its services in the Gemini Transaction.

### Defendant's Work for Brew First, Inc.

28.     In spring 2020, around when Plaintiff suggested a "go public event" for GunBroker.com, Plaintiff also solicited Defendant to invest in Brew First, Inc. ("Brew First"), a start-up intended to manufacture and sell machinery and ingredients for brewing alcoholic beverages.

29.     Plaintiff represented that he was a major shareholder in Brew First.

30.     Defendant invested $64,000 in Brew First at Plaintiff's urging.

31.     After Defendant invested in Brew First, Plaintiff asked help in developing the Brew First business. For instance, Plaintiff asked Defendant to assist in building a sales team and to serve as a board member.

32.     At Plaintiff's request, Defendant introduced Brew First to potential sales team leaders and assisted in developing potential sales team structures.

33.     Defendant was never compensated for the services he provided at Plaintiff's request.

### III.     Issues at Trial

Defendant expects the following to be issues at trial:

**A. Plaintiff Cannot Satisfy the Elements of Unjust Enrichment.**

To prevail on a claim for unjust enrichment, a plaintiff must prove that (1) he "has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1313–14 (S.D. Fla. 2006) (J. Altonaga) (citation omitted).[1] Plaintiff cannot establish these elements.

> *i. Plaintiff has not conferred a benefit on Defendant, and Defendant thus has not knowingly accepted or retained any benefit conferred by Plaintiff.*

Plaintiff cannot prove that he has conferred a benefit. Plaintiff did not find a buyer for GunBroker.com nor contribute any services to the Gemini Transaction. A plaintiff cannot make a prima facie case for unjust enrichment where it cannot show "that it ha[s] directly conferred a benefit on the defendant[ ]." *Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996). Plaintiff's claim that he "conferred a substantial benefit on [Defendant]" by "find[ing] a buyer for Gun[B]roker.com" (DE 292, Am. Compl., at ¶ 40) fails where Plaintiff did no such thing—instead, Plaintiff connected Defendant with Maxim to find a SPAC, and Maxim ultimately identified a different type of buyer and assisted in negotiating a merger between Gemini and Ammo.

---

[1] While *Posely* refers to the cause of action as "quantum meruit," it notes that under Florida Law, "a claim of quantum meruit is synonymous with a claim for contract *implied in law*, as opposed to a contract *implied in fact*." 433 F. Supp. 2d at 1314 (emphasis in original). *Posely* cites the Florida Supreme Court's explanation that the "legal fiction" of contract implied in law "was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Id.* (internal quotation marks and citation omitted). For clarity in the face of the Florida case law which has "often . . . blurred" "the distinction between quantum meruit actions and actions based upon contracts implied in fact," Defendant will refer to the cause of action only as "unjust enrichment."

      *ii.   The circumstances are not such that it would be inequitable for Defendant not to pay Plaintiff for the benefit conferred.*

Plaintiff's purported benefit conferred upon Defendant being the identification of a buyer highlights that the circumstances are not such that it would be inequitable for Defendant not to pay Plaintiff, as Defendant has already paid the entity that actually conferred this benefit. "Unjust enrichment 'cannot exist where payment has been made for the benefit conferred.'" *N.G.L. Travel Assocs. V. Celebrity Cruises, Inc.*, 764 So. 2d 672, 675 (Fla. 3d DCA 2000) (quoting *Gene B. Glick Co. v. Sunshine Ready Concrete Co.*, 651 So. 2d 190 (Fla. 4th DCA 1995)). Maxim identified Ammo. When the Gemini Transaction closed, Gemini paid Maxim $4.24 million for its role in facilitating the merger. Indeed, it would be inequitable for Gemini (or its principal, Defendant) to pay a second entity for the benefit arising from Maxim's services.

Plaintiff may also assert that he made statements to Defendant and others regarding expectations of being paid in relation to the sale of GunBroker.com and that such expectations make it inequitable for Plaintiff not to be paid. Any such statements would be inadmissible hearsay. *See United States v. Gregory*, 472 F.2d 484, 487 (5th Cir. 1973)[2] ("Prior statements of witnesses are hearsay and are generally inadmissible as affirmative proof.") (citation omitted).

"Logically, the circumstances necessary to establish" unjust enrichment "must demonstrate that the plaintiff was harmed in some way before courts will impose th[e] equitable remedy" of unjust enrichment. *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1334–35 (S.D. Fla. 2007) (J. Jordan). In *Prohias*, the plaintiffs claimed a drug manufacturer had been unjustly enriched where the plaintiffs paid for a drug that purportedly reduced heart disease, an assertion for which there was no scientific proof. *Id.* at 1332. The Court found that where the plaintiffs continued to purchase the drug even after they knew the truth, the plaintiffs had failed to state a claim for unjust

---

[2] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting all decisions of the former Fifth Circuit handed down prior to October 1, 1981, as binding precedent).

enrichment. *Id.* at 1335. Here, similarly, Plaintiff allegedly continued searching for a buyer for GunBroker.com even after Defendant advised that Plaintiff could not be paid for his role in any transaction and cited multiple reasons, including an exclusive agreement with an investment banking firm and Plaintiff's lack of registration. Like the plaintiffs in *Prohias*, Plaintiff cannot show that the circumstances are such that it would be inequitable for him not to be paid.

The circumstances show that the value Defendant obtained through the Gemini Transaction came from the decades of work Defendant spent developing his business. To the extent Maxim contributed value to the transaction by connecting buyer with seller, Maxim was compensated via a $4.24 million fee. Plaintiff cannot show that he was harmed and is due recovery because he sent a single email connecting Defendant with Mr. Fiore.

### iii. *Plaintiff cannot establish any "fair value" owed for the benefit conferred.*

Plaintiff lacks evidence of the "fair value" of the benefit he purportedly conferred. "Because unjust enrichment damages are economic damages, the amount of damages must be measurable and quantifiable: [i]t has long been accepted in Florida that a party claiming economic losses must produce evidence justifying a definite amount." *Taxinet, Corp. v. Leon*, No. 16-24266, 2022 WL 212702, at *4 (S.D. Fla. June 16, 2022) (J. Moreno) (alteration in original) (citation and internal quotation marks omitted). *See also Prohias*, 485 F. Supp. 2d at 1334 ("Damages are also an element of claims for . . . unjust enrichment under Florida . . . ."). "The measure of damages for unjust enrichment is the value of the benefit conferred, not the amount the plaintiff hoped to receive or the cost to the plaintiff." *F.H. Paschen, S.N. Nielsen & Assoc., LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 50 (Fla. 4th DCA 2021) (citing *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 332 (Fla. 5th DCA 2007)).

The parties have agreed in their joint proposed jury instructions that "[t]he value of the benefit can be based on either: (1) the market value of [Plaintiff's] services; or (2) the value of

[Plaintiff's] services to [Defendant]." DE 314 at 31. Plaintiff has no evidence of either.

Plaintiff has no expert to testify as to the market value of his services nor any evidence of prior rates he charged or earned for services comparable to those he provided to Defendant. Plaintiff also cannot testify as to the value of his alleged services where he has never been paid for such services. Plaintiff's lack of experience being paid for the services he asserts he performed for Defendant means that any testimony from Plaintiff regarding the market value of his services would not be "rationally based on the witness's perception" and thus would be impermissible lay witness testimony. Fed. R. Evid. 701.

Though Defendant's companies signed agreements with Houlihan Lokey and Maxim for services related to the Gemini Transaction, those agreements are not evidence of the fair value of Plaintiff's alleged services. The services of Houlihan Lokey and Maxim, as investment banking firms and **registered brokers**, are not comparable to the alleged services of Plaintiff, an unregistered individual who admittedly did not introduce Gemini to Ammo. Agreements for the services of Houlihan Lokey and Maxim are thus irrelevant to the fair value of Plaintiff's services. Fed. R. Evid. 401. Alternatively, those documents would be prejudicial, confusing, and misleading to an extent that outweighs their probative value. Fed. R. Evid. 403.

Plaintiff has always based his damages solely on the amount he hoped to receive under an unsigned consulting agreement he sent to Defendant. Any other evidence is inadmissible as evidence supporting undisclosed theories of damages. *Vital Pharms., Inc. v. Monster Energy Co.*, No. 19-60809-CIV, 2020 WL 13513442, at *1–2 (May 20, 2020). Plaintiff's only disclosed basis for his asserted damages, the unsigned consulting agreement, is insufficient to prove the proper measure of damages. *See F.H. Pachen*, 311 So. 3d at 51 (holding that an unsigned document proposing a price and "a separate document showing a breakdown of costs . . ." together "did not meet what was required under" an unjust enrichment theory). Plaintiff's inability to prove "fair

9

value" of his alleged services renders him unable to prevail on his claim for unjust enrichment.

Plaintiff also cannot use unrelated lawsuits to argue that the equities require he be paid. For instance, Plaintiff previously relied on GunBroker.com, LLC's involvement in the Northern District of Georgia case *Tenor Capital Partners, LLC v. GunBroker.com, LLC*,[3] to assert that Defendant raised defenses and claims in this lawsuit in bad faith. DE 148 at 21–22; DE 149 at 2, 21. *Tenor*, however, is irrelevant, and evidence of it inadmissible.

No party here is a party in *Tenor*. A different state's law applied in *Tenor*. DE 216 at 5; *Tenor Capital Partners, LLC v. GunBroker.com, LLC*, No. 1:20-CV-613-TWT, 2022 WL 1620432, at *1 (N.D. Ga. May 23, 2022). *Tenor* is factually distinct in that the services in that case were severable, and the plaintiff's unjust enrichment claim "was narrowly premised on advisory services that do not require registration (and thus are not illegal) . . . ." *Tenor Capital Partners, LLC v. GunBroker.com, LLC*, No. 1:20-CV-613-TWT, 2022 WL 12464321, at **3–4, 6 (N.D. Ga. Oct. 21, 2022).

Further, reliance on *Tenor* is an improper attempt to show propensity. Fed. R. Evid. 404(b). *Tenor* has no probative value and would require "mini-trials on [an] unrelated case[ ]." *Royal Bahamian Ass'n, Inc. v. ABE Ins. Corp.*, 745 F. Supp. 2d, 1380, 1384–85 (S.D. Fla. 2010).

**B. Compensating Plaintiff Would Be Unlawful.**

Plaintiff seeks payment related to the Gemini Transaction, which involved the sale and exchange of securities. Defendant asserts as a defense that Plaintiff cannot recover because he does not have the licenses required to attempt to cause the exchange of securities.

This Court should determine as a matter of law that the Gemini Transaction involved the sale and exchange of securities under federal and Florida securities laws governing the registration of brokers and dealers. Def. Tr. Ex. 55, Merger Agmt. That transaction indisputably involved the

---

[3] *Tenor* is now on appeal in the Eleventh Circuit Court of Appeals as case no. 22-13911.

sale and exchange of stock—Defendant exchanged stock in his companies for shares in publicly traded Ammo, Inc. Indeed, Plaintiff's unjust enrichment claim is expressly premised on this alleged benefit. Am. Compl. ¶ 41 ("Urvan, the sole shareholder of Gunbroker.com, was able to sell his shares in a transaction whose total value was approximately $240 million."). Plaintiff has always sought damages based on Plaintiff having sold his shares to Ammo. The broad definition of "security" under the Exchange Act is easily met here. 15 U.S.C. § 78c(a)(10); *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 (1985).

  *i. Paying an unlicensed broker a commission violates federal law.*

  Section 15(a) of the Exchange Act, which governs "Registration and regulation of brokers and dealers," makes it unlawful for "any broker or dealer" "to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, **or to induce or attempt to induce** the purchase or sale of any security" unless the broker or dealer is registered with the Securities and Exchange Commission ("SEC") in accordance with Section 15(b). 15 U.S.C. § 78o(a)(1). An entity wishing to engage in "broker" activities must register with the SEC and become a member of Financial Industry Regulatory Authority ("FINRA") f/k/a National Association of Securities Dealers ("NASD"), which is the only SEC registered securities association. 15 U.S.C. § 78o(b). *Gallagher v. Fin. Indus. Reg. Auth., Inc.*, No. 21-13605, 2022 WL 1815594, at *1 (11th Cir. June 3, 2022).

  Plaintiff asserts he is entitled to a commission or transaction-based compensation because he was the procuring cause of a transaction involving the sale and exchange of securities. The $2.5 million purported fee or transaction-based compensation that he seeks is one of the "hallmarks" of being a broker. *Edge Point Capital Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, n.5 (1st Cir. 2021) (collecting cases). For the purposes of the registration requirement only, Plaintiff attempts to distance himself from the ultimate securities transaction. He would instead have the

Court limit its inquiry to those services he claims to have provided to Defendant leading to that transaction. Plaintiff ignores that "the registration requirement applies **as soon as** a broker attempts to induce a securities transaction." *Id.* at 60. Plaintiff did not simply make an introduction and walk away. Plaintiff himself claims he actively pursued Defendant to induce a securities transaction, arranging meetings with potential buyers and investors, improving pitch sheets, discussing deal terms, and making recommendations to Defendant. By his own account, Plaintiff "induce[d] or attempt[ed] to induce" a securities transaction. He was required to register under the non-exhaustive list of factors, commonly referred to as the Hansen factors, recognized by the Eleventh Circuit in analyzing registration under the Exchange Act. *See SEC v. Imperiali, Inc.*, 594 Fed. Appx. 957, 961 (11th Cir. 2014); *SEC v. Hansen*, o. 83-Civ-3692, 1984 WL 2413, at *10 (S.D.N.Y. April 6, 1984).

Plaintiff admittedly was not registered with the SEC or FINRA.

Plaintiff's failure to register as a broker under federal law bars his unjust enrichment claim. *See Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 564 (5th Cir. 1982) ("persons who perform services without obtaining a required occupational license have been denied recovery either on their contract or in quasi-contract").

*ii.   Paying an unlicensed dealer a commission violates Florida law.*

Broker-dealers are also required to register with the State of Florida before effecting transactions under Florida law. Any "dealer" who sells or offers for sale any securities "in or from" offices in this state or sells securities to persons "in this state from outside the state," "by mail or otherwise," must register. Fla. Stat. § 517.12(1). Chapter 517 defines "dealer" as "[a]ny person, other than an associated person registered under this chapter, who engages, ***either for all or part*** of her or his time, ***directly or indirectly, as broker*** or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." Fla. Stat. § 517.021(6)(a) (emphasis added). While Chapter 517 does not separately define "broker," the

Florida Legislature has applied a definition similar to that in the exchange act. *See* Fla. Stat §678.1021(1)(c) ("'Broker' means a person defined as a broker or dealer under the federal securities laws, but without excluding a bank acting in that capacity."). Florida courts also rely on federal cases interpreting the Exchange Act when analyzing claims under Chapter 517. *Oppenheimer & Co. v. Young*, 456 So. 2d 1175, 1177 (Fla. 1984), *vacated on other grounds*, 470 U.S. 1078 (1985).

For the same reasons applicable under federal law, Plaintiff engaged in broker-dealer activities in inducing and attempting to induce the Gemini Transaction. Plaintiff therefore acted as a "dealer" under Chapter 517 and violated Florida law by failing to register.

Plaintiff's assertion that his activities did not involve the offer or sale of securities in Florida is wrong. A seller under Chapter 517 is not restricted to those who actually transfer title to the securities but extends to persons who solicit the purchase motivated at least in part by a desire to serve their own financial interests or those of the securities owner. *Pinter v. Dahl*, 486 U.S. 622, 643 (1988). Defendant is a Florida resident who exchanged stock he owned for stock certificates mailed to his house in Florida. At all pertinent times Plaintiff directed his communications regarding the securities to Defendant in Florida, where he resides.

Although Florida does not apply the multi-factor *Hansen* test, the Florida courts that have addressed our issue under the Florida Securities Act have clearly held that one cannot avoid Florida's registration requirements by seeking a "finder's fee" for inducing a securities transaction. *See, e.g.*, *Umbel v. Foodtrader.com, Inc.,* 820 So. 2d 372, 374 (Fla. 3d DCA 2002) (affirming summary judgment and finding violation of Chapter 517 where unregistered plaintiff sought 10% commission to "evaluate companies" as possible investments or to "find investors"); *Buehler v. LTI Int'l*, 762 So. 2d 530 (Fla. 2d DCA 2000) (affirming summary judgment against individual who claimed "failure to pay him a finder's fee" for sale of stock).

Florida law is clear that where a contract is illegal, "no action may be brought on it, whether

in law or in equity." *Katz v. Woltin*, 765 So. 2d 279, 280–81 (Fla. 4th DCA 2000). *See also Edwards v. Trulis*, 212 So. 2d 893, 895 (Fla. 1st DCA 1968). Plaintiff cannot recover for unlawful activity.

   iii.   *Plaintiff Is Not Exempt from the Registration Requirements.*

   Plaintiff asserts that he can avoid the registration requirements because he acted as a "finder" or "mergers and acquisition ("M&A") broker." He is wrong.

   Under federal law, there is ***no exception*** to the requirement to register as a broker. Plaintiff may assert that a No-Action Letter issued by the SEC permits "M&A brokers" to earn a commission.[4] First, a No-Action Letter is not agency rule-making, nor does it adjudicate any fact issue.  Second, he does not meet the definition of an M&A Broker, which is limited to those in the business of effecting securities transactions "solely" in connection with the "transfer of ownership and control" of a privately held company.

   In Florida, the only recognized exemption at issue is for M&A brokers. Fla. Stat. §517.12(22)(a). Plaintiff is not entitled to this exemption because he was not in the business of effecting securities transactions "solely" in connection with the transfer of ownership and control of eligible privately held companies. Further, Florida requires a M&A broker to obtain written assurances from both the buyer and seller prior to the completion of the securities transaction. Plaintiff failed to obtain such assurances.

**C. Plaintiff's Claim Is Barred for Multiple Reasons.**

   Defendant asserts defenses that bar Plaintiff's recovery. These defenses include:

- Illegality due to Plaintiff being an unlicensed broker under federal law and/or dealer under Florida law;
- Illegality due to Plaintiff acting as an unlicensed investment advisor under federal

---

[4] Although in 2023, Congress passed legislation creating an exemption for M&A Brokers, that exemption is not retroactively applied. Further, Plaintiff does not meet the definition of an M&A Broker, as discussed.

law;

- Illegality due to Plaintiff acting as an unlicensed business broker under Florida law;
- Unclean hands;
- Estoppel;
- Waiver;
- Failure to mitigate damages; and
- Setoff.

**D. To the Extent Plaintiff is Due Any Compensation, It Must Be Reduced.**

Any damages to Plaintiff must be reduced by his failure to mitigate his damages or set off by the value of those services Plaintiff induced Defendant to provide relating to Brew First. Plaintiff failed to mitigate his damages when he failed to seek compensation on the buy-side of the Gemini Transaction, even after Defendant made clear to him that no compensation would come from the sell-side. Further, any damages must be set off by the value of the services Defendant provided relating to Brew First, at Plaintiff's request.

**IV.    Conclusion**

Plaintiff cannot prove any element of his claim for unjust enrichment. Even if he could, his illegal activities would make it unlawful for Defendant to pay Plaintiff for his alleged services. Finally, any payment found to be owed to Plaintiff would need to be reduced by Plaintiff's failures to mitigate damages and to compensate Defendant for services he provided at Plaintiff's request.

JONES FOSTER P.A.
Attorneys for Defendant
505 S. Flagler Drive, Suite 1100
West Palm Beach, FL 33401
(561) 650-0404 [Telephone]
(561) 650-5300 [Facsimile]

By:   Joanne M. O'Connor
        Steven J. Rothman, B.C.S.
        Florida Bar No. 501591
        srothman@jonesfoster.com
        Joanne M. O'Connor
        Florida Bar No. 498807
        joconnor@jonesfoster.com

15

Michael J. Gore
Florida Bar. No. 071886
mgore@jonesfoster.com
Hanna B. Rubin
Florida Bar No. 1031872
hrubin@jonesfoster.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By: /s/  Joanne M. O'Connor
      Joanne M. O'Connor

**HAYDEN V URVAN**
**CASE NO:  9:21-cv-82051-WM**
**SERVICE LIST**

Fred Alan Cunningham, Esq.
Matthew Thomas Christ, Esq.
Domnick Cunningham & Yaffa
2401 PGA Boulevard, #140
Palm Beach Gardens, FL 33410
Phone: (561) 625-6260
Fax: (561) 625-6269
Fred@pbglaw.com
Matthew@pbglaw.com
Tracy@pbglaw.com
Eservice@pbglaw.com
*Co-Counsel for Plaintiff, Matthew Hayden*

Adam T. Rabin, Esq.
Havan M. Clark, Esq.
Lauren Johnson, Esq.
Andrew M. Abreu, Esq.
Rabin Kammerer Johnson
1601 Forum Place, Suite 201
West Palm Beach, FL 33401-8102
(561) 659-7878
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
ljohnson@rkjlawgroup.com
aabreu@rkjlawgroup.com
e-filing@rkjlawgroup.com
*Co-Counsel for Plaintiff, Matthew Hayden*

#3575227 v1 31820-00001